20-1792 et al., Buddha Ismail Jam et al., Appellants, Kashubai Abrambai Majalia v. International Finance Corporation. Mr. Hertz for the appellants, Mr. Green for the appellate. Council for Appellants, you may proceed. Thank you, Your Honor, and good morning. I'm Richard Lawrence Hertz for the appellants. May it please the Court. Under the Foreign Sovereign Immunities Act, a sovereign is not immune for its commercial activity in the United States, because the question is whether the sovereign is immune. Immunity necessarily turns on the sovereign's conduct. To determine if the claim is based upon U.S. commercial activity by the sovereign or upon some other conduct by the sovereign, the Court identifies the gravamen of the claim against the defendant. And that really asks a simple question, which is why is this plaintiff suing this defendant? And here, plaintiff sued the IFC for its own tortious conduct. It provided the keystone loan that allowed this project to go forward, and among other things, it approved all of the design of this plant that harmed the plaintiff. And it did so knowing that the design it approved and that the plant going forward would pollute the air, that it would destroy the fisheries, and it would cause a series of other harms to plaintiff's communities that continue to plague plaintiffs to this day. And IFC committed all of these acts at its headquarters in Washington, D.C., so IFC is not immune. Now, instead of looking for the gravamen of the claim against IFC, the district court created a new requirement that's at odds with the statute's history, purpose, and precedent, which is that regardless of the gravamen of the claim against the IFC, the district court held that plaintiffs had to show that IFC's conduct was the last harmful act. Well, wasn't the district court just following Sachs? You know, it seems like the court was just doing what Sachs directs. In Sachs, they claim they didn't use gravamen because, you know, they didn't use it with them, but they claim that the plaintiffs claim that the gravamen there was a sale of the ticket without any warning. Here, you claim that it's IFC's decision making. And then the court said there is nothing wrong about the sale of the Ural Pass standing alone without the existence of the unsafe boarding conditions in Innsbruck. There would have been nothing to warn Sachs about. And it seems that the same thing applies here. Without the unsafe construction and operation of the plan in India, there's nothing wrongful about IFC's decision making. It just seems like this case is totally controlled by Sachs. So a couple of points about that, Your Honor. First of all, Sachs didn't specifically address the question at issue here because the question, Sachs- Wait, wait, wait, wait. Just respond to my question about the factual similarities here. I know your argument about the third party, but what about my question about Sachs? So what Sachs said about the sale of the ticket was that it didn't cause the conditions on the platform. But that's not true of this case because what IFC did directly caused it. They approved the design of this plant. And the problem with this plant is largely about its design. So, for example, this plant puts out a river of heated water that's destroyed the fishery. That isn't because the plant was constructed wrong or operated wrong. That's because it was designed that way. And IFC approved that design. So it would be as if the problem- Where did IFC do that? Here in Washington, D.C. It would be as if in OBB, so the problem in OBB was that there was a design defect in the platform. This would be OBB. This case would be OBB if the railroad approved the design of the platform here. The construction cost $4.2 billion. Is that right? It's something like that. And IFC's contribution, financial contribution, was $450 million. Yes. 10%. Was the construction design already in place when IFC came on board? The construction design isn't in place until IFC approved it because they had final approval authority over the design. And so they were- None of the other lenders had approved any kind of say in the design except IFC? I don't remember seeing that being alleged. Well, I can't answer that question because we don't have the other loan agreements. We only have IFC's loan agreements. So you can't make any representation like the one you just made, that they had the final approval? No. Well, IFC's authority- This project doesn't go forward without IFC because IFC provides the keystone loan. So nobody else comes on board unless IFC comes on board. That's pursuant to IFC's own rules. And IFC would not disperse each tranche of the loan, including the first tranche of the loan, until they approved the design. The loan documents were signed where? The loan documents were signed in India, but everything- In India, right. Yeah. But everything IFC did that we allege is tortious from approving the loan, dispersing each individual tranche of the loan- I'm sorry, approving the design, dispersing each individual tranche of the loan, knowing that the design was faulty and that it either would or as the project went forward was causing harms to plaintiffs, refusing to, or declining to enforce each of the provisions of the loan that would have allowed IFC to enforce the standards in the loan that says you can't do this to these communities. All of those things were decisions that IFC made and actions IFC took here in the United States. And I think what OBB was really getting at was that they don't want claims where- you don't want arguments where the plaintiff can recast his claim. But if you look at, for example, the First Circuit's opinion in Merlini, when you're you're not recasting your claimant. So that concern of OBB's isn't there. You see, but I'm looking back at the Supreme Court's decision. It says, rather than individually analyzing each of the Nelsons, each Nelson's causes of actions, referring back to Nelson, we zeroed in on the core of their suit, the Saudi sovereign acts that actually injured them. And if you apply that language to this case, it's rather than individually analyzing each of the plaintiff's causes of action, we zero in on the core of their dispute. Right. The company's acts in India that actually injured them. That's what- So the core of this dispute is that IFC committed cautious conduct here in the United States. So the test that both Sachs and Nelson lay out is that to determine the gravamen of a claim, you look to the elements of the claim under plaintiff's theory of liability. And it's a Hornbrook principle of tort law that when you have multiple tort feasors, each defendant is liable for its own conduct. And in particular, where one defendant takes an action that leads to or allows another party- I get that. But again, the Supreme Court said that, look, in that case, in Sachs, it was a failure to warn, right? Right. Here, it's a failure to supervise. I mean, I don't see the difference in terms of- I just don't see a material difference between those two in the outcome of the case. I mean, if Sachs had been properly warned, she might not have bought the ticket. It's the same argument, isn't it? No, it's not primarily a failure to supervise. It's affirmative conduct in giving the loan and approving the design. And so this project would not have had the problems it had if IFC didn't affirmatively approve the design. That's different from what happened in Sachs, because all they did was- the failure to warn did not cause the problem at the platform. And that's just not true here. IFC was part and parcel of the design here that caused the problem. It sounds like you're arguing a different subject. There are two separate subjects here. One is, what is your lawsuit based on? And the other is that, assuming there's no sovereign immunity, is IFC liable? You're arguing about liability, legal liability, rather than the based on analysis the Supreme Court required. I would say just the opposite, Your Honor. One of the problems, and the district court identified this problem in its first opinion when it identified the Groverman as being IFC's conduct, and then it switched in the second. One of the problems it noted was that the last harmful act approach that IFC advocates is actually a limit on liability. And this is because, under the last harmful act approach, you can never have- a sovereign is always immune and can never be liable for aiding and abetting, conspiracy, any joint tort, fees, or claim where it's not the last act. The problem with that is that the Supreme Court in First National City Bank has expressly held that the Foreign Sovereign Immunities Act is not a limit on liability, citing section 1606 in the legislative history. When a sovereign is engaged in commercial activity, it has to be treated just like a private party, and that means it has the same liability rules. The problem with their approach is that it is not having the same liability rules. The plaintiff's defendants would be liable in this case under ordinary tort principles as a joint tort feeser, and here IFC's argument is that they are not because of a different based-upon rule than applies in the liability context. I see, Your Honor, that I'm eating into rebuttal time, but I'm happy to answer any other questions the Court has now. All right, why don't we hear from Apelli, and then we'll come back to you. Counsel for Apelli? Good morning, Your Honors. Jeffrey Green from Sidley Austin for Apelli International Finance Corporation with me today are my partner Jenny Clark and Dana Foster and Max Kalman from White & Case. I'd like to start where you started, Judge Tatel, with respect to the applicability of SACS. We believe that this case is controlled by SACS, as Your Honor noted. The plaintiff's artful pleading here is to try and move up the causation chain to IFC's decision to make the loan in the first place. That move, Your Honor, is foreclosed by both SACS and Nelson. Both SACS and Nelson say that but-for causation doesn't do it. The test, in fact, is what is the particular conduct that actually injured the plaintiffs? And as Your Honor knows, Chief Justice Roberts went on to say that the essentials, I'm quoting Justice Holmes, the essentials of a personal injury narrative are where the injury actually took place. And in this instance, that is Postal Gujarat's construction and operation of the plant in India. What about the plaintiff's argument that the gravamen of the injury can't be third-party conduct? I think Judge Randolph was on to the flaw there. And the flaw is plaintiffs are citing cases and looking to a different analysis. That analysis is whether there was commercial conduct. So plaintiff's cases look to foreign acts to determine whether those acts had a direct effect in the United States. That is a different situation and a different part of the statute that we're concerned about here. And in those cases, Your Honor, courts have to grapple with who did the act and was the act commercial or not. So of course, when they look at whether the act was commercial or not, they look at only the acts of the sovereign in those cases. No one would contend, Your Honor, that if the question were whether IFC's acts were commercial or not, and we submit emphatically that they are not for one of the reasons that Mr. Hurst pointed out, that we would look at IFC's actions. But that's a threshold question. The remaining question is the one we're dealing with here. And that is, where is the gravamen? And the gravamen is the particular conduct that injured the plaintiffs. So let me just be clear as to your understanding of the law. So if the engineers or the construction company on the site, but there is also evidence that the design itself on its face called for something that would create damage to the plaintiffs. In other words, insufficient consideration of irrigation, et cetera, causing pollution of the streams. And all that is evident on the face of the plans. And yet, the defendant here agrees to participate by lending money. Is it that there is no way to get at the defendant's actions? Or that the plaintiffs have simply pursued the wrong theory of their case? Respectfully, Your Honor, there would be no way. IFC has immunity in this, even in that situation, because that's simply dividing claims. The Supreme Court said no, and Judge Bates said, and the United States said, no, we're going to look at the case as a whole. We're going to look at the essentials of the case. And the essentials- Well, I was trying to pose a hypothetical where there wasn't any question that it was the loan was in connection with commercial activity. And the defendant was acting in that respect. I take your point about immunity. But the question in my mind is, have the plaintiffs properly pled? And I think, as my colleagues have pointed out, there are a number of obstacles to be overcome here. But I just want to be sure I understand what your understanding of the law in this area is. Well, I mean, Your Honor points out that if a private actor did that, then a private actor might be subject to suit. But IFC is not a private actor. IFC has immunity. And the Grobman test does not apply to private actors. It might apply, something like it might apply if we look at whether the forum nonconvenience test applies or something like that. But the Grobman test is unique for IFC. Plaintiffs don't deny that the Grobman test applies here. And so the question becomes, where were the injuries? Where did the boy get his fingers pinched? What are the essentials of the claim? And here, the essentials of the claim are foreign cube. These are foreign plaintiffs. These are foreign events. These are alleged foreign injuries. So even if, Judge Rogers, we moved further down the causal chain with respect to IFC's actions, but forecausation is still not enough. It's a different inquiry. It's not who caused. It's what happened. So I also would like to address the narrative here because my colleague, Mr. Herz, pointed out many times in his presentation that IFC approved the design of the plant. And there are, as your honors pointed out, some serious hurdles there because if you look at the complaint, just even looking at the face of the complaint, paragraph 65, 67, 165, IFC dispersed before those plans were modified. They were significantly modified by Coastal Gujarat afterwards and in ways that caused the plaintiff's injuries here, which leaves the plaintiffs with a complaint. Well, you didn't address those modifications. You didn't do what your own CIO said you should do, which was address those modifications. But that is just the same as Judge Tatel, you pointed that out. That is identical to a failure to warrant claim. And I would recommend to the court, and there was a failure to warrant claim in Nelson too. And Judge Rogers, I would point out that if you look at the facts in Nelson, in Nelson, the Saudi Arabian government advertised in the United States through agents. They recruited Mr. Nelson in the United States through agents. They negotiated and signed an agreement in the United States through Nelson. They oriented, excuse me, through Saudi Arabia. They oriented Mr. Nelson in the United States. And yet the Supreme Court said, no, no. The grabberment is in Saudi Arabia because that's where the injuries took place, which is exactly why Sachs so strongly reaffirmed that. And I would also like to address, Your Honor, with respect to Sachs, the plaintiff's claims that this court should look at individual claims or should look at individual elements of claims. A plain reading of Sachs, and Judge Tatel, you quoted it earlier, says that that language in Nelson, and it's there, but that language in Nelson was overread by the Ninth Circuit. That's not how you do the test. You don't go claim to claim. But even if we went claim to claim here, it would still be the case that IFC's actions, the grabberment of the suit and IFC's actions would have taken place in India. Why is that? That's because if IFC was to make changes or insist on changes to the design, this is the government's point, Your Honor, was to insist on changes to the design and Judge Bates bought it, that would have to be accepted and implemented in India. If IFC were to insist on compliance with its environment and social standards, that compliance would have had to take place in India. The plaintiff's third-party issues drop out. They're talking about the wrong analytical framework. The plaintiff's claim-by-claim analysis drops out. They're talking about the wrong analytical framework, and Sachs tells us what that means. We are left, Your Honor, with nothing but a grabberment, nothing but India. All right. Anything further? Thank you, counsel. Can I make one more point, Your Honor, if I may, please? Please. There's a question about whether what IFC does is commercial or not. I want to emphasize something that Mr. Hurst said earlier, which Your Honor can find at page 693 in the JA, and that is that IFC does not lend or invest unless there is insufficient private capital available on reasonable terms. So what does that mean? That means that IFC does things that commercial banks don't do. That's the opposite of acting like a commercial party in this instance. And as Judge Bates pointed out, there is certainly the possibility that a public organ could use a private tool, like a loan agreement or a contract, in order to fulfill its public purpose. And we submit that that's what IFC does day in and day out under the immunities that are conferred by the IOIA and by IFC's articles. All right. My colleagues have no further questions. Thank you. Thank you, Your Honor. Counsel for Appellant? Thank you, Your Honor. If I heard my friend on the other side correctly, he conceded, as he must, that a private actor might be liable in these circumstances. And that's exactly our point. That's that if the court can't impose a different liability. That can't be a test, because then Nelson is wrongly decided. If somebody tortures somebody and holds them, kidnaps them, they'd be liable. No, that doesn't mean that the sovereign immunity is not there. Let me put it this way. You don't need sovereign immunity if you're not liable. You only need it if you're liable. The issue would be, what conduct is the Graviman? And their Graviman test. So the problem in Nelson is that the Graviman wasn't commercial conduct. But their Graviman test cuts off liability. It says that you can never have liability unless you commit the last harmful act. It wasn't commercial. You can't be serious about that. I mean, recruiting and hiring is not a commercial activity. That is a commercial activity. But that's what Saudi Arabia did. No, what the Supreme Court said in Nelson is that the recruiting and hiring wasn't the basis of the claim. The torture was. But the point I'm making is that when you figure out what the Graviman of the claim is, not when you figure out its character, but when you figure out what the Graviman is, you can't adopt a rule that cuts off liability. Because the Supreme Court specifically said in First National City Bank that the act was not intended to affect the substantive law determining the liability of a foreign state. And their last harmful act rule is a liability rule. It says you can never have aiding and abetting and various other kinds of liability. And that's inconsistent. Their position is inconsistent with this court's opinion in Transamerica, where this court held that there were two government entities. One was liable for aiding and abetting the other. And one was not immune for aiding and abetting the other. And if you take their approach, the embassy in that case would have been immune because all it did was aid and abet the other entity's torts. There's no way to reconcile their position with Transamerica. Would you, Mr. Harris, would you just quickly respond to Mr. Green's argument about your third party argument? I'm sorry, Your Honor. Would you respond to Mr. Green's response to your third party argument? Yeah, I mean, I think wherever you look, whether you look to this court's precedent in cases like Transamerica, I think if you look to the text, it's very clear that what the IFC, I'm sorry, that what Congress was trying to do was establish a geographic limit. So once a party is engaged in commercial activity, it's not immune. And what Congress, for its conduct, and so then the question becomes, where can you sue it? It's very clear that what Congress intended was this to be something akin to a long arm statute and personal jurisdiction never looks to a third party's acts. Eight circuits, including this one, have either indicated or held, and this court held, that you look to the acts of the party itself. And once you do that... Weren't those all pre-Sax cases? They were not all pre-Sax cases. I mean, in, for example, NACA, this court looked to Nigeria's acts, not to the acts of, in that case, it was DOJ, which committed the last harmful act. And in fact, so that approach was, the Fifth Circuit adopted that approach of looking to the Sovereign Defendants Act in Calejo. And the Supreme Court in both OBB and Nelson specifically held, specifically relied on Calejo for its test. Their position is that when it adopted the same test in Calejo, it actually overturned Calejo, and that just doesn't make a whole lot of sense. Okay. Thank you. Thank you. And if I could just close on one final point. If we were at the merit stage and we said, IFC is liable because Coastal Gujarat acted tortuously, the court and IFC would rightly object that we have to prove that IFC acted tortuously. And that's exactly our point. This is a case about IFC's negligence. It's what IFC did wrong. That's where the court has to look in order to determine what the basis of the claim is. And the basis of the claim is that IFC committed a series of tortious acts here in the United States. Thank you. We'll take the case under advisement.
judges: Rogers, Tatel, Randolph